**DiSABATO & CONSIDINE LLC**
Lisa R. Considine, Esq.
David J. DiSabato, Esq.
196 Santiago Avenue
Rutherford, New Jersey 07070
Phone: 201.762.5088
Fax: 973.453.0338
lconsidine@disabatolaw.com
ddisabato@disabatolaw.com

**VARNELL & WARWICK, P.A.**
Brian W. Warwick, FBN:  0605573
Janet R. Varnell, FBN:  0071072
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com
kstroly@varnellandwarwick.com
*(Pro Hac Vice Applications forthcoming)*

*Attorneys for Plaintiffs Deborah Mazzei
and Allen Call*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH MAZZEI and ALLEN CALL, and on behalf of themselves and the putative class, | Civil Action |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| vs. | |
| HEARTLAND PAYMENT SYSTEMS, LLC. | Case No.: |
| Defendants. | |

Plaintiffs Deborah Mazzei and Allen Call ("Plaintiffs") file this Class Action Complaint on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, by way of Class Action Complaint, state and allege matters pertaining to themselves and their own acts, upon personal knowledge, and as to all other matters, upon information and belief based upon the investigation undertaken by their counsel against Heartland Payment Systems, LLC (hereinafter "Heartland" or "Defendant") as follows:

## I.    INTRODUCTION

1.      This is a class action on behalf of Plaintiffs and a class of all other similarly situated persons against Heartland Payment Systems, LLC, a credit card payment processing company which owns and operates its MySchoolBucks Program, which is a stored-value account platform used by over 30,000 schools nationally to pay for school lunch and other school fees.

2.      Heartland's contractual agreement with its users states that a "Program Fee" may be required by the school.  This statement is false. The "Program Fee" is not a school requirement nor is it a payment for participating in the MySchoolBucks "program."  Instead, the "Program Fee" is actually a credit/debit card surcharge imposed and collected by Heartland, the amount of which is dictated by Heartland based upon the payment method used to deposit funds into the child's account.

3.      Parents placing funds into their child's MySchoolBucks account using a credit card are charged a Credit Card Surcharge, the amount of which can vary slightly by school district.

4.      Parents placing funds into their child's MySchoolBucks account using a debit card are charged a Debit Card Surcharge, the amount of which can also vary by school district.

5.     Because Credit and Debit Card Surcharges are heavily regulated and must be clearly disclosed, Heartland has engaged in an unfair and deceptive practice in violation of New Jersey law.

6.     In addition, Heartland operated in a manner which wrongfully implies that Heartland is associated with a department or agency of this State.

7.     Specifically, Heartland made unequivocal representations to Plaintiff Mazzei and the New Jersey Subclass that the fees charged to use Heartland's MySchoolBucks payment service were fees that were required by the school district.  By doing so, Heartland operated in a manner which wrongfully implies that Heartland is associated with a department or agency of this State in violation of the New Jersey Consumer Fraud Act.

8.     Plaintiffs, on behalf of themselves and those similarly situated, bring this action for damages and injunctive relief against Heartland for its common course of unlawful and fraudulent conduct in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq*., ("CFA") the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq*., ("TCCWNA"), and breach of contract.

## II.     JURISDICTION AND VENUE

9.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class; the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs; Plaintiff Mazzei is a resident of New Jersey; Plaintiff Call is a resident of Louisiana; Defendant is a now a resident of Georgia; and Defendant conducts an ongoing course of business in this State and throughout the United States.

10.    Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) and (3) because Defendant conducts an ongoing course of business in this State and throughout the United States, and because the contract between the parties contains a Choice of Law Provision which dictates that the claims are to be governed under New Jersey law and that the Courts of New Jersey are an agreed upon forum for this lawsuit.  Heartland was originally headquartered in New Jersey.

### III.    PARTIES

11.    Plaintiff Deborah Mazzei is a natural person and is a resident of Gloucester County, and a citizen of the State of New Jersey.

12.    Plaintiff Allen Call is a natural person and is a resident of Ouachita Parish, and a citizen of the State of Louisiana.

13.    Defendant Heartland Payment Systems, LLC was formerly headquartered in Princeton, New Jersey until it was acquired by Global Payments in April of 2016.  Since 2016, Heartland's principal address has been 10 Glenlake Parkway, North Tower, Atlanta, Georgia 30328.  Heartland is a corporate citizen of the States of Delaware and Georgia.

### IV.    FACTUAL ALLEGATIONS

14.    Heartland Payment Systems, Inc. ("Heartland") is a publicly traded, Fortune 500 Company.  It is the fifth largest card payment processor in the United States.  It provides credit/debit/prepaid card processing, mobile commerce, e-commerce and related business services to more than 275,000 businesses and educational locations nationwide.

15.    When Heartland acts as a credit card payment processor for businesses other than schools, it charges a very small fee to the "merchant" for its services – less than 2%.  However, when Heartland processes credit cards for schools, it inflates its rates substantially – often above 5%.

16.     Heartland offers schools across the country its "MySchoolBucks Program" which is the leading K-12 point-of-sale software program that schools use to charge students for items sold at the school, primarily school lunch.  The online portal allows parents to deposit funds into their child's MySchoolBucks "account," which acts like a stored-value card similar to a prepaid credit card.  By using the MySchoolBucks Program, schools do not have to worry about children carrying cash, staff handling cash, or checks bouncing.

17.     Heartland Payment Systems has two separate profit streams generated by its MySchoolBucks Program.  First, Heartland charges the school for costs of the program, including, but not limited to, leasing of equipment including scanners, software, programming, pin pads, training, and maintenance fees.  These contracts are automatically renewed and cost the school districts tens-of-thousands of dollars each year.

18.     Second, Heartland also charges a Credit/Debit Card Surcharge to the school each time a parent deposits money into a child's MySchoolBucks account. This fee is the same fee charged to other merchants accepting credit cards, such as retail shops and restaurants.  Most of the time, the fees are so low that the merchant simply pays the charge as part of its overhead.  Here, the amount is substantially higher than the amounts charged to other merchants and can be paid either by the merchant/ school or by the parents, at the election of the school.  The Surcharge, however, is always charged, collected and completely retained entirely by Heartland.

19.     Plaintiffs only learned of the true nature of the Surcharge and of Heartland's intent to hide it from consumers after counsel made Freedom of Information Act requests to schools throughout the country using the MySchoolBucks Program.  To understand Heartland's scheme, a brief understanding of its contracts with the schools and its subsequent contract with parents is required.  Heartland uses form contracts for schools throughout the country.

A.    **HEARTLAND'S SCHOOL CONTRACTS**

20.    Once the school district has agreed to use the MySchoolBucks Program, Heartland enters into a "K-12 Merchant Processing Agreement" with the school.  For example, attached hereto as Exhibit A is the Merchant Processing Agreement with Duval County Public Schools, in Florida.

21.    Under the Merchant Processing Agreement, the school becomes the "Merchant" and Heartland, the "Processor."

22.    The Merchant Processing Agreement includes a "Fee Schedule" detailing the amounts that Heartland will charge each time a parent uses a credit card or debit card (ACH) to place funds into a student's MySchoolBucks account.  The Heartland Fee Schedule states as follows:

**CARD FEE SCHEDULE**

| Service Requested | Discount Rate | Discount Per Item | Trans Fee Dial | Trans Fee IP | | | | |
|---|---|---|---|---|---|---|---|---|
| Visa | % | $ 2.49 | | | Annual Volume: | $ 25,000 | Average Ticket: | $ 45.00 |
| MasterCard | % | $ 2.49 | $ 0 | $ 0 | | | High Ticket: | $ 45.00 |
| Discover/JCB | % | $ 2.49 | | | ☒ Service Fee (Pass Through/Single Transaction) | | | |
| TSYS Authorization | % | $ | $ | $ | ☐ COST PLUS | | | |
| PIN Debit* | | | | | *Plus Applicable Debit Network Fees | | | |

Fee Model: ☐ District Absorbed    ☒ Parent Paid

| **RECURRING FEES** | | | | **SETTLEMENT** |
|---|---|---|---|---|
| Chargeback Fee: | $0 | Voice Authorization Fee: | $0 | ☐Monthly ☒Daily Net |

| **INTERCHANGE QUALIFICATION** | **CARD ACCEPTANCE** | **DEPOSIT METHOD** |
|---|---|---|
| ☒ MOTO / Internet ☐ Retail ☐ Small Ticket | ☒ All Cards Accepted | ☒ Standard |

**ACH FEE SCHEDULE**

| Transaction Fee | $ 1.95 | % | Annual ACH Volume: $ 2,500.00 | Average ACH Amount: $ 21.00 |
|---|---|---|---|---|
| Monthly Fee | | $ 0 | Average # of ACH Transactions per Month:  40 | |
| Return Item Fee | | $ 0 | Max ACH Limit:  500.00 | |

(Exhibit A, Merchant Processing Agreement – Duval County Public Schools).

23.     Accordingly, for an "Average Ticket" amount of $45, Heartland charges a $2.49 Surcharge per credit card transaction.  For each transaction where a parent uses a Debit Card (ACH), a $1.95 Surcharge is imposed.  In the Duval County example, the school and Heartland decided that these amounts would be "parent paid" rather than "District Absorbed."   On information and belief, Heartland has entered into thousands of substantially similar contracts with schools across the country, including the Westville School District, which Plaintiff Mazzei's child attended and the Ouachita Parish School District, which Plaintiff Call's children attend.

24.     Critically, the "Fee Model" option under the "Card Fee Schedule" gives the school the option of paying these fees itself by checking the "District Absorbed" box.  On information and belief, both the Westville School District and Ouachita Parish Schools, like Duval County Schools in the above example, chose to have these Surcharges "Parent Paid."  On information and belief, thousands of schools across the country elect to have these Surcharges paid by the parents. However, Heartland fails to properly disclose the true nature of these fees to any parents.

25.     Although there are additional detailed contracts that govern the relationship between the school and Heartland, the Merchant Processing Agreement controls the Credit/Debit Card Surcharges at issue in this case and because it is the only true explanation of the basis for the Surcharges at issue.

26.     On information and belief, the contract between Heartland and the schools also requires that the rules and regulations of the Credit Card Companies:  Visa, Mastercard, Discover and American Express ("Credit Card Companies"), must be fully complied with as the schools are becoming a "merchant" of all those companies as a result of the Merchant Agreement with Heartland.

27.     All Credit Card Companies require a prominent disclosure of all Credit/Debit Card Surcharges or Convenience Fees at the point of sale which explains the nature of the fees, the amount of the fee and how it was calculated.  The Credit Card Companies also limit how much can be charged for such fees.  As explained below, these rules have not been followed.

28.     Because Heartland fails to disclose the true nature of the Credit/Debit Card Surcharge at all, it cannot charge these fees without violating the rules and regulations imposed by the Credit Card Companies.  *See generally* Exhibit B, Visa Rules, Section 5.

### 5.6.1.6 US Credit Card Surcharge Maximum Amount – US Region and US Territories

In the US Region or a US Territory: A US Credit Card Surcharge assessed at the brand level, as specified in *Section 5.6.1.5, US Credit Card Surcharge Requirements – US Region and US Territories*, must not exceed the Merchant's Visa Surcharge Cap.

In the US Region or a US Territory: A US Credit Card Surcharge assessed at the product level, as specified in *Section 5.6.1.5, US Credit Card Surcharge Requirements – US Region and US Territories*, must not exceed the Merchant's Visa Credit Card Surcharge Cap less the Debit Card Cost of Acceptance.

In no case may the US Credit Card Surcharge amount exceed the Maximum Surcharge Cap.

### 5.6.1.7 US Credit Card Surcharge Disclosure Requirements – US Region and US Territories

In the US Region or a US Territory: A Merchant must, at both the point of entry into the Merchant Outlet and the Point-of-Transaction, clearly and prominently disclose any US Credit Card Surcharge that will be assessed.

The disclosure at the Point-of-Transaction must include all of the following:

l The exact amount or percentage of the US Credit Card Surcharge

l A statement that the US Credit Card Surcharge is being assessed by the Merchant and is only applicable to credit Transactions

l A statement that the US Credit Card Surcharge amount is not greater than the applicable Merchant Discount Rate for Visa Credit Card Transactions at the Merchant

Merchants with Acceptance Devices that offer Cardholder choice for debit Transactions in the form of "credit" and "debit" buttons must ensure that:

l Debit Card Transactions are not assessed a US Credit Card Surcharge

l It is made clear to the Cardholder that surcharges are not permitted on debit Transactions regardless whether a Cardholder selects the "credit" or "debit" button

For an Electronic Commerce Transaction, a Mail/Phone Order Transaction, and an Unattended Transaction, the Cardholder must be provided the opportunity to cancel the Transaction subsequent to the US Credit Card Surcharge disclosure.

For example, the requirement for clear and prominent disclosure will be satisfied if the disclosure is made consistent with *Table 5-5, Surcharge Disclosure – US Region and US Territories*:

Table 5-5: Surcharge Disclosure – US Region and US Territories

| Transaction Type | Point-of-Entry | Point-of-Transaction |
|---|---|---|
| Face-to-Face Transaction | Main entrance(s) of the Merchant Outlet, in a minimum 32-point Arial font, but in any case no smaller or less prominent than surrounding text | Every customer checkout or payment location, in a minimum 16-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Electronic Commerce Transaction | The first page that references credit card brands accepted, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text | Checkout page, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Mail order Transaction | The first page of the catalog that references credit card brands accepted, in a minimum 8-point Arial font, but in any case no smaller or less prominent than surrounding text | Mail order form, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text |
| Telephone order Transaction | The first page of the catalog that references credit card brands accepted, in a minimum 8-point Arial font, but in any case no smaller or less prominent than surrounding text | Verbal notice from the telephone order clerk, including US Credit Card Surcharge amount |
| Unattended Cardholder-Activated Terminal | Main entrance(s) of the Merchant Outlet (if applicable) (for example: gas [petrol] station store) in a minimum 32-point Arial font, but in any case no smaller or less prominent than surrounding text | On the Unattended Cardholder-Activated Terminal or virtual disclosure on the payment terminal screen, in a minimum 16-point Arial font, but in any case no smaller or less prominent than surrounding text |

### 5.6.2.1 Convenience Fees – AP, CEMEA, and US Regions

In the AP Region, CEMEA Region (Russia), US Region: A Merchant that charges a Convenience Fee must ensure that the fee is assessed as follows:

Table 5-6: Convenience Fee Requirements

| Convenience Fee Requirement | AP Region | CEMEA Region (Russia) | US Region |
|---|---|---|---|
| Charged for a bona fide convenience in the form of an alternative payment channel outside the Merchant's customary payment channels and not charged solely for the acceptance of a Card | X | X | X |
| Added only to a Transaction completed in a Card-Absent Environment | X | | X |
| Not charged if the Merchant operates exclusively in a Card-Absent Environment | X | | X |
| Added only to a domestic Unattended Transaction, excluding Transactions at Automated Fuel Dispensers, Telephone Service Transactions, or ATM Cash Disbursements | | X | |
| Charged only by the Merchant that provides goods or services to the Cardholder | X | | X |
| Applicable to all forms of payment accepted in the payment channel | X | X | X |
| Disclosed clearly to the Cardholder: <br> • As a charge for the alternative payment channel convenience <br> • Before the completion of the Transaction. The Cardholder must be given the opportunity to cancel. | X | X | X |
| A flat or fixed amount, regardless of the value of the payment due <br><br> In the AP Region: An ad valorem amount is allowed as required by applicable laws or regulations. <br><br> In the CEMEA Region (Russia): The amount must not exceed: <br> • RUB 35 for Transactions processed with MCC 4814 | X | X | X |

Table 5-6: Convenience Fee Requirements (continued)

| Convenience Fee Requirement | AP Region | CEMEA Region (Russia) | US Region |
|---|---|---|---|
| • RUB 60 for Transactions processed with MCC 4900 <br> • RUB 48 for all other Transactions | | | |
| Included as part of the total amount of the Transaction and not collected separately | X | X | X |
| Not charged in addition to a surcharge | X | N/A[1] | X |
| Not charged on a Recurring Transaction or an Installment Transaction | X | X | X |
| [1] Surcharging is not allowed. | | | |

29.     Mastercard, Discover and American Express have similar disclosure requirements before any Surcharge can be charged.

30.     Because Heartland failed to disclose that its "Program Fees" were actually Credit/Debit Card Surcharges and/or Convenience Fees, the fees are strictly prohibited under the Rules of all Credit Card Companies.

## B.     HEARTLAND'S CONTRACT WITH PARENTS

31.     Once the school contracts with Heartland to use the MySchoolBucks system, parents of that school receive notice and are strongly encouraged, if not required, to use the Heartland system for all payments made to the school.  Parents are directed to Heartland's website – www.myschoolbucks.com - to create an account.

32.     The standard form MySchoolBucks Terms of Service Agreement is a contract only between Heartland and parents, like Plaintiffs.  The school is not a party to this Agreement.  Thus, to the extent that Heartland passes on a charge from the school to the parent, it does so as the agent of the school.

33.     The Agreement between Heartland and parents in place at the time Plaintiffs Mazzei and Call first were charged program fees by Heartland explained the limited service that Heartland was offering, in part, as follows:

> **License and Site Access**
> Heartland Payment Systems, Inc. grants you a limited license to access and make personal use of this Service to pay your child's school for goods and services sold by the school and/or school district (i.e., school meals).  You may also be able to use the Service to obtain information about the balance of meal prepayments at your child's school, and to review your child's food purchases at the school cafeteria. …
>
> **Payments to Schools**
> You may make payments to your child's school account by using a credit card.  Your credit card provider may have imposed a

maximum amount which can be placed on your credit card. **Your child's school receives the full payment.** Payments are processed promptly for your child's use. …

**One Time Payments**
You authorize MySchoolBucks to debit the bank account indicated in this web form for the noted amount on today's date. You understand that because this is an electronic transaction, these funds may be withdrawn from your account as soon as the above noted transaction date. You acknowledge that the origination of ACH transactions to your account must comply with the provisions of U.S. law. …

**Recurring Payments**
You authorize MySchoolBucks to debit the bank account indicated in this web form for the noted amount on the schedule indicated. You understand that this authorization will remain in effect until the scheduled end date, or until you cancel the payment, whichever comes first. If the above noted payment falls on a weekend or holiday, you understand that the payment may be executed on the next business day. You understand that because this is an electronic transaction, these funds may be withdrawn from your account as soon as the above noted transaction date. You acknowledge that the origination of ACH transactions to your account must comply with the provisions of U.S. law. …

…

**Program Fee or Membership Fee**
Your school district may require a program fee or membership fee for your use of the Service.

If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

…

**Applicable Law**
By visiting MySchoolBucks.com, you agree that the laws of the State of New Jersey will govern these Terms of Use, and any dispute relating to the Service provided herein shall be subject to the jurisdiction of the courts of the State of New Jersey.

Exhibit C, MySchoolBucks Terms of Service (emphasis added).

34.    Heartland's MySchoolBucks website further clarifies the Program Fee on its Frequently Asked Questions page as follows:

> Is there a fee for using MySchoolBucks?
>
> Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.

MySchoolBucks Frequently Asked Questions.[1]

35.    Although Heartland's Terms of Service specifically references credit and debit card payments, it fails to disclose the Credit/Debit Card Surcharges that are imposed as a result of the Merchant Agreement with the school.  In fact, Heartland's MySchoolBucks Terms and Conditions falsely states that "Your child's school receives the full payment."   (Exhibit C, "Payment to Schools").

36.    In fact, the only fee even mentioned by Heartland's Agreement with parents is the "Program Fee" or "Membership Fee."  The explanation of the "Program Fee" or "Membership Fee" is false and deceptive in three ways.

37.    First, the Program Fee is not explained at all. The Program Fees are not charged by the school for participating in the MySchoolBucks "Program."  Instead, they are Credit/Debit Card Surcharges imposed by Heartland under its Merchant Agreement with the school.  The Surcharges are imposed by the payment processor and based entirely on the method of payment used. If the fees were not linked to the method of payment, they would not differ when a payment is made with a debit card ($1.95) versus a credit card ($2.49).

---

[1] https://www.myschoolbucks.com/ver2/help/gethelp  Site last visited December 4, 2019.

38.     Furthermore, Credit/Debit Card Surcharges must be clearly disclosed so that consumers know what they are being charged for, and can inquire of their card provider or bank regarding the legitimacy of the Surcharges. All credit card companies, including Visa, Mastercard, Discover and American Express have specific rules regulating how Credit Card Surcharges can be imposed, including notice to both the Credit Card Company and the consumer. Heartland's Merchant Agreement requires compliance with the Rules established by all Card companies. Because all Card Providers require clear disclosure of any Credit Card Surcharges, Heartland's "Program Fee" or "Membership Fee" explanation fails to meet any of those requirements and is therefore unlawful.

39.     Second, the explanation of the Surcharge is false and deceptive because the school does not "require" the Surcharges at all. The Credit/Debit Card Surcharges are imposed and collected entirely by Heartland under the credit card and ACH "Fee Schedules" in the Merchant Agreement. In fact, the Merchant Agreement even states that the Surcharges are a "Pass Through" to Heartland.

40.     Third, the Credit/Debit Card Surcharges collected under the guise of "Program" or "Membership" fees, does not go to the School. Instead, these amounts are charged and retained exclusively by Heartland. Under the "Payments to Schools" section of the Terms of Service (Exhibit C), Heartland states: "Your child's school receives the full payment." When this contract language is combined with the "Program/Membership Fee" explanation that the fee is "required" by the school, a reasonable consumer would believe that the school is both requiring and receiving all of these payments. In fact, the entire Credit/Debit Card Surcharge is required, collected and retained by Heartland.

41.     Some school districts around the country have even attempted to clarify the misleading nature of the representations surrounding the "Program Fees" by issuing statements to the public explaining that it is Defendant, and not the school district, which sets and retains the fees.  For example, the Souderton Area School District in Pennsylvania released the following notice in regards to the 2017 MySchoolBucks Program Fee increase: "Souderton Area School District does not collect or receive this fee. It is the fee charged by the company that administers the credit/debit card payments."[2]

## C.    FACTS RELATING TO PLAINTIFF MAZZEI

42.     Plaintiff Deborah Mazzei and her daughter live in Gloucester County, New Jersey. Until March 2019, her daughter attended school in the Westville School District.  Plaintiff Mazzei and her daughter moved to a different school district after March 2019.

43.     In February 2018, at the request of the Westville School District, Ms. Mazzei created and began using a MySchoolBucks account to pay for her daughter's lunches.

44.     Between February 2018 and March 2019 (when she moved from the District and ceased using her MySchoolBucks account), Ms. Mazzei was charged and paid fifteen (15) transaction fees of $2.50 each, for a total of $37.50.

45.     Ms. Mazzei processed her last transaction on MySchoolBucks on March 6, 2019. She has not processed another transaction since that time, and has not agreed to any new Terms of Service that were created by Heartland subsequent to March 2019.

---

[2] http://www.soudertonsd.org/parents-students/food-services/myschoolbucks-convenience-fee-increase.  Site last visited December 4, 2019.

46.    Despite Heartland's representation that its program was "free," it was not free as a Program Fee was charged each and every time Ms. Mazzei put funds into her MySchoolBucks account.

47.    Despite Heartland's representation that the School District "required" Ms. Mazzei to pay a Program Fee, the Westville School District did not require any such fee.

48.    Despite Heartland's representation that the Program Fees paid by Ms. Mazzei were being paid to the School District, the Westville School District actually did not receive any of the Program Fees paid by her.

49.    Plaintiff Mazzei paid Program Fees to Heartland believing them to have been required and paid to the school.  She was unaware that the fees were actually Credit/Debit Card Surcharges or Convenience Fees charged for using her credit card to put money into the accounts of her daughter.  Had she known the true nature of the fees, she would not have paid them and would have contacted her bank and Credit Card Company to complain about the fees.  She only paid the program fees because she was deceived by Heartland.

### D.    FACTS RELATING TO PLAINTIFF CALL

50.    Plaintiff Allen Call, his wife and two children live in West Monroe, Louisiana.  His two school-aged children attend the Ouachita Parish School District.  Mr. Call's oldest child is autistic.

51.    Sometime during 2012, Mr. Call received notification from the Ouachita Parish School District that parents could no longer deliver checks to the school to pay for their children's lunch and would thereafter either have to send cash with the child or create a MySchoolBucks account with Heartland.  Sending cash with his children, especially a child with autism, was a very unworkable solution for Mr. Call.  As a result, he was forced to create a MySchoolBucks account.

52.     Between 2012 and 2019, Mr. Call was charged and paid at least thirty-nine (39) Program Fees of $2.50 each, for a total of $97.50.

53.     Just before the start of the 2019-2020 school year, Mr. Call went to the MySchoolBucks website to log in to his account to deposit funds for the new year.  Before he could access his account, however, Heartland required him to agree to new Terms of Service.  Mr. Call was very distressed to learn that the new Terms of Service required him to consent to binding, mandatory arbitration of all past and future claims, banned him from participating in any class action, and specifically waived his right to participate in a class action lawsuit pending in Florida.

54.     Because he did not agree to the new Terms of Service, Mr. Call was unable to access his MySchoolBucks account and was also unable to retrieve any funds that remained in his account from the previous year.

55.     Because Mr. Call chose not to sign onto the Heartland account and waive his claims and rights, he has since been forced to send his children with cash to school in order to pay for their lunch and other expenses.

56.     Despite Heartland's representation that its program was "free," it was not free as a Program Fee was charged each and every time Mr. Call put funds into his MySchoolBucks account.

57.     Despite Heartland's representation that the School District "required" Mr. Call to pay a Program Fee, the Ouachita Parish School District did not require any such fee.

58.     Despite Heartland's representation that the Program Fees paid by Mr. Call were being paid to the School District, the Ouachita Parish School District actually did not receive any of the Program Fees paid by him.

59.     Plaintiff Call paid Program Fees to Heartland believing them to have been required and paid to the school.  He was unaware that the fees were actually Credit/Debit Card Surcharges or Convenience Fees charged for using his credit card to put money into the accounts of his children.  Had he known the true nature of the fees, he would not have paid them and would have contacted his bank and Credit Card Company to complain about the fees.  He only paid the program fees because he was deceived by Heartland.

### CLASS ALLEGATIONS

60.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this action on behalf of themselves and all others similarly situated.

The Class is defined as:

**NATIONWIDE CLASS:**  All persons in the United States who entered into a MySchoolBucks Terms of Service Agreement with Heartland in a form substantially similar to Exhibit C, and who paid a MySchoolBucks Program Fee to Heartland, during the class period.

> **NEW JERSEY SUBCLASS:**  All persons who reside in the State of New Jersey who entered into a MySchoolBucks Terms of Service Agreement with Heartland in a form substantially similar to Exhibit C, and who paid a MySchoolBucks Program Fee to Heartland, during the class period.

61.     Excluded from the Classes are: (a) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals with claims for personal injury, wrongful death and/or emotional distress.

62.     The Class Period shall be determined by the claims that are certified.

63.     Heartland's Terms of Service Agreement dictates that New Jersey law "governs these Terms of Use."  The statute of limitations is six years for the New Jersey Consumer Fraud

Act ("CFA"), the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") and for Breach of Contract.

64.     Plaintiffs can identify and ascertain all other Class and Subclass members from Heartland's business records. These records are computerized and will reflect which customers were charged and paid Heartland's deceptive and unfair "Program Fee" which was actually an undisclosed Credit/Debit Card Surcharge.   Thus, Plaintiffs' proposed Class and Subclass is ascertainable.

65.     **Numerosity**: The members of the Class and Subclass are so numerous and geographically diverse that joinder of them all is impracticable. Plaintiffs do not know the exact size of the class(es) because this information is in Heartland's exclusive control.  However, based on the nature of the commerce involved and the size and scope of Heartland's business, Plaintiff believes the Class and Subclass members number in the tens of thousands and that Class and Subclass members are dispersed throughout the United States, including Louisiana and New Jersey. Therefore, joinder of all class members would be impracticable.

66.     **Typicality:** Plaintiffs' claims are typical of other Class and Subclass members' claims because Plaintiffs and all Class and Subclass members were subject to a standard form Terms of Service Agreement and were charged the same unlawful MySchoolBucks Program Fee by Heartland, which was actually a Credit/Debit Card Surcharge.  Plaintiffs and the other members of the Class and Subclass seek identical remedies under identical legal theories, and Plaintiffs' claims do not conflict with the interests of any other members of the class in that the Plaintiffs and the other members of the Class and Subclass were subject to the same conduct and suffered the same harm.

67.    Before this Complaint was filed, Plaintiffs – through counsel – made Freedom of Information Act requests to various school districts identified through public records as having a contractual arrangement with Heartland similar to Duval County Public Schools. Plaintiffs received documentation and reviewed Merchant Agreements between Heartland and a multitude of school districts in California, Colorado, Florida, Illinois, Louisiana, New Jersey and New York. It appears from this review that Heartland uses standard form Merchant Agreements during the class period that do not materially vary from one school district to another.  While the amounts charged to the parents for Credit/Debit Card Surcharges may vary slightly by school, the differences are minor and merely mathematical.   Regardless, Heartland uniformly fails to accurately disclose the Credit/Debit Card Surcharges and systematically states that only a Program Fee or Membership Fee may be required by the school.  Each of Heartland's Merchant Agreements dictate that the rules imposed by Visa, Mastercard, Discover and American Express must be followed, including any fees charged as Credit/Debit Card Surcharges.

68.    **Commonality and Predominance:** Questions of law and fact common to the Class and Subclass exist and predominate over questions affecting only individual members, including, *inter alia*, the following:

  a.    Whether Heartland's representations regarding the MySchoolBucks Program Fee are unfair and deceptive because the fees are actually Credit/Debit Card Surcharges;

  b.    Whether Heartland's Term of Service Agreement section titled "Program Fee or Membership Fee" deceptively explains its Credit/Debit Card Surcharge in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.;

c.  Whether Heartland violated the Rules imposed by Visa, Mastercard, Discover, American Express or ACH for imposing surcharges for use of a credit or debit card;

d.  Whether the aforementioned violations of the NJCFA and Heartland's failure to comply with the disclosure requirements imposed by Visa, Mastercard, Discover, American Express, or ACH for imposing Credit/Debit Card Surcharges constitutes violations of the New Jersey Truth-in-Consumer Contract Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq.*, specifically N.J.S.A. 56:12-15;

e.  Whether Heartland's actions have proximately caused an ascertainable loss to Plaintiff and members of the Class and Subclass and, if so, the proper measure of damages;

f.  Whether Plaintiffs and Class members and Subclass members are entitled to declaratory and injunctive relief; and

g.  Whether the contracts between Heartland and the parents (including Plaintiffs) were breached.

69.  **Adequacy:** The named Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class and Subclass because they possess no interest antagonistic to the Class members and Subclass members they seek to represent, and because the adjudication of their claims will necessarily decide the identical issues for all other Class and Subclass members. Whether CFA and TCCWNA were violated and whether Heartland breached its contract with parents involve predominating common issues that will be decided for all consumers who entered

into similar or identical Terms of Service Agreements.  There is nothing peculiar about Plaintiffs'
situation that would make them inadequate class representatives.

70.    Plaintiffs have retained counsel competent and experienced in both consumer
protection and class action litigation.

71.    **Superiority:** A class action is superior to other methods for the fair and efficient
adjudication of this controversy because the damages suffered by each individual Class member
and Subclass members are relatively modest, compared to the expense and burden of individual
litigation.  It would be impracticable for each Class member and Subclass members to seek redress
individually for the wrongful conduct alleged herein. It would be difficult, if not impossible, to
obtain counsel to represent Class members and Subclass members on an individual basis for such
small claims.  More importantly, the vast majority of Class members and Subclass members are
not aware that Heartland's MySchoolBucks Program Fee violates the CFA and/or TCCWNA and
if Heartland breached its contract with parents.  Practically speaking, a class action is the only
viable means of adjudicating the individual rights of Plaintiff and the Class. There will be no
difficulty in the management of this litigation as a class action as the legal issues affect a
standardized pattern of conduct by Defendant and class actions are commonly used in such
circumstances.  Furthermore, since joinder of all members is impracticable, a class action will
allow for an orderly and expeditious administration of the claims of the Class and Subclass and
will foster economies of time, effort and expense.

72.    Heartland also acted and refused to act on grounds generally applicable to the Class
and Subclass, thereby making appropriate declaratory relief and corresponding final injunctive
relief with respect to the Class as a whole under Federal Rule of Civil Procedure 23(b)(2).
Heartland should be enjoined from misleading consumers by asserting that its Program Fees are

"required" by the school district, and are ultimately paid to the school district, a government entity, when Heartland actually keeps the Program Fee for itself.  Heartland should be further subject to an affirmative injunction requiring full disclosure of any Credit/Debit Card Surcharges or Convenience Fees requiring compliance with notice and disclosure requirements of all Credit Card Companies.

73.     Because Plaintiffs seek injunctive relief for Class members and Subclass members, the prosecution of separate actions by individual Class members and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members and Subclass members which would establish incompatible standards of conduct for Defendants. Further, adjudications with respect to individual Class members and Subclass members would, as a practical matter, be dispositive of the interests of other Class members and Subclass members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

<u>**COUNT I**</u>
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-1 *et seq.***

74.     Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 73 as if expressly set forth in this Count.

75.     N.J.S.A. 56:8-2. declares that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; …

76.    Plaintiffs are both "persons" and "consumers" pursuant to N.J.S.A. 56:8-1(d), as they and all Class members are natural persons as defined therein.

77.    Defendant is a "person" pursuant to N.J.S.A. 56:8-1(d), as it is a business entity, corporation or company as defined therein.

78.    Defendant's MySchoolBucks service is "merchandise" pursuant to N.J.S.A. 56:8-1(c), as it is a service offered directly or indirectly to the public for sale as defined therein.

79.    Defendant engages in the sale of merchandise pursuant to N.J.S.A. 56:8-1(e), as it offers its MySchoolBucks service directly or indirectly to the public for sale.

80.    Heartland engaged in an unconscionable, unfair, deceptive, fraudulent and/or misleading pattern and practice by making misleading or false statements regarding fees charged to Plaintiffs and the putative Class members, fraudulently omitting required disclosures and charging Surcharges in excess of those permitted by applicable rules and the Merchant Agreements between Heartland and school districts of which parents are intended third-party beneficiaries. More specifically, those violations were:

a.    Heartland enters into uniform Merchant Agreements with various schools throughout the United States.  In those Merchant Agreements, Heartland regularly imposes a Credit and/or Debit Card Surcharge to be paid by either the School or parents.  Heartland subsequently enters into standard form MySchoolBucks Terms of Service Agreements with parents where it misrepresents the surcharge as a "program fee" required by the school districts:

**Program Fee or Membership Fee**
*Your school district may require a program fee or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a*

screen prior to completing the payment transaction and any
such program fee will be required for each payment you
make using the Service.

Exhibit C, Terms of Service (emphasis added).

This language is unfair and deceptive because the Merchant Agreement
with the school districts reveals that the true nature of the charge is a
Credit/Debit Surcharge and not a program fee imposed or collected
collected by the school.

b.      Under the "Payments to Schools" section of the Terms of Service
        Agreement, Heartland states "Your child's school receives the full
        payment."  This statement is untrue because the money charged as Program
        Fees are not given to schools.

c.      Additionally,    Heartland's    MySchoolBucks    website    states    that
        MySchoolBucks is "free" and that the school districts impose the Fee:

        Is there a fee for using MySchoolBucks?

        Signing up for MySchoolBucks is **free**. Depending on your
        school/district and order/item you are purchasing, you may
        be required to pay a program or membership fee.[3]

        (Emphasis added). This statement is false or deceptive because it is not free
        and Heartland knew that parents would be required to pay Credit/Debit Card
        Surcharges every time money is placed on the child's account.

d.      Heartland made omissions of material facts by failing to disclose the true
        nature of the program fees as Credit/Debit Card Surcharges, the basis for the
        imposition of the program fees, where the money went, and how the amount

---

[3] https://www.myschoolbucks.com/ver2/help/gethelp  Site last visited December 4, 2019.

of the fee was determined. Specifically, because the fees are actually a Credit/Debit Card Surcharge resulting from its Merchant Agreement, it should have explained these facts to parents in accordance with the disclosure requirements imposed by the Credit Card Companies.

e.    Heartland made further omissions when it failed to comply with the Credit Card Company disclosure requirements for Credit/Debit Card surcharges that are clearly intended to benefit the consumer. Namely, Merchants must clearly and prominently disclose to consumers any surcharge that will be assessed, including (i) the exact amount or percentage; (ii) a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions; and (iii) a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction.

f.    Heartland's Program Fees as imposed on Plaintiffs and the putative Class members were unfair in that their actual status as Credit/Debit Card Surcharges was never disclosed to the consumer and because the amount of the charge exceeded the rules of the Credit Card Companies because surcharges must be no more than the cost of credit and have a cap far below the amounts set by Heartland.

81.    The scheme perpetrated by Heartland in the way it assessed its Program Fees was deceptive and unfair, and its explanation for the program fees it charged was false and/or misleading because Heartland failed to disclose that the fees are actually Credit/Debit Card

Surcharges. Defendants' conduct lacks honesty in fact, fair dealing and good faith and has the capacity to mislead consumers acting reasonably.

82.    Further, Heartland's omission of required disclosures was unlawful and injurious to Plaintiffs. Full and fair disclosure of the nature of the fees, the cost of the fees and who was charging and receiving the fees are all necessary information for a consumer in deciding whether to accept and pay the Credit/Debit Card Surcharge. Consumers like Plaintiffs did not understand the extent to which they could reject or challenge the Surcharge, did not have a practicable option to comparison shop under the circumstances, and also were unaware of who or how to protest or question the legitimacy or the amount of the Surcharge. Had Plaintiffs known the true nature of the Program Fees as Credit/Debit Card Surcharges, they would not have paid the fee and/or would have challenged the fee with his credit card company.

83.    Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*.

84.    N.J.S.A. § 56:8-2.11 provides that "Any person violating the provisions of the CFA shall be liable for a refund of all monies acquired by means of any practice declared herein to be unlawful."

85.    Plaintiffs and Class members suffered an ascertainable loss equal to the amount of all Program Fees paid during the class period in that Heartland caused them to pay money pursuant to false or deceptive statements and omissions of material fact regarding the Credit/Debit Card Surcharges/program fees. The amount of this ascertainable loss is equal to the entire Surcharge because it was never properly disclosed.

86.     As a result of Defendant's aforementioned violations, Plaintiff Mazzei suffered an ascertainable loss an amount no less than $37.50, which represents the total amount of fees that she was forced to pay to Defendant.

87.     As a result of Defendant's aforementioned violations, Plaintiff Call suffered an ascertainable loss in an amount of no less than $97.50, which represents the total amount of fees that he was forced to pay to Defendant.

88.     As a result of Defendant's aforementioned violations, Plaintiffs and putative Class members are due to receive their actual damages equal to the ascertainable loss of all program fees paid to Heartland during the class period.

89.     Alternatively, Plaintiffs and Class members suffered an ascertainable loss in that Heartland caused them to pay money in excess of the allowable Credit/Debit Card Surcharges allowed under the Rules of the Credit Card Companies.  The Credit Card companies all limit Surcharges to the merchant's cost of credit.  Because Heartland charges far in excess of the cost of accepting Credit/Debit Card payments, it violates these limits to the detriment of Plaintiffs and the putative class.

90.     This misrepresentation of the Credit/Debit Card Surcharge as a "Program Fee" required by and paid to the school had a direct bearing on Plaintiffs' decision to pay the fees.  Had Plaintiffs been provided with actual disclosure of the Program Fees as Credit/Debit Surcharges, they would have challenged the assessment of and amounts of the fees and would not have paid the "Program Fee."

91.     As a direct and proximate result of Heartland's violations of the CFA as set forth in the preceding paragraphs, Plaintiffs suffered a concrete and ascertainable loss in the amounts of

each $2.50 Surcharge imposed upon them by Heartland each time the placed funds into their children's MySchoolBucks account, as set forth above.

92.     But for Heartland's unconscionable acts and misrepresentations in violation of the CFA, Plaintiffs would not have suffered any damage.  Said another way, Plaintiffs' damages are the direct and proximate result of Defendant's violations of the CFA, in that their loss flowed directly from Heartland's acts.

93.     In addition, Plaintiffs and Class members are entitled to declaratory and injunctive relief, declaring that Heartland violated N.J.S.A. 56:8-2; and prohibiting Heartland from further violations of the CFA.

94.     Plaintiffs and Class members are also entitled to treble damages pursuant to N.J.S.A. § 56:8-19.

95.     In accordance with N.J.S.A. § 56.8-19, Plaintiffs and Class members are entitled to attorney's fees and litigation costs.

<u>**COUNT II**</u>
**Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act,**
**("TCCWNA") N.J.S.A. §56:12-14 *et seq*.**

96.     Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 95 as if expressly set forth in this Count.

97.     The New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA) § 56:12-14 *et seq.,* prohibits sellers from "offer[ing] to any consumer or prospective consumer or enter[ing] into any written consumer contract or giv[ing] or display[ing] any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal Law . . . ." N.J.S.A. § 56:12-15.

98.     Plaintiffs and all members of the Class are "consumers" within the meaning of TCCWNA.

99.     Heartland is a "seller" within the meaning of TCCWNA.

100.     Heartland's MySchoolBucks Terms of Service Agreement is a written agreement between Heartland and Plaintiffs which is both a "consumer contract" and a notice within the meaning of TCCWNA.

101.     Heartland gave, displayed, offered and/or entered into the MySchoolBucks Terms of Service Agreement with Plaintiffs as well as with all members of the Class.

102.     Heartland's contract with parents contains a provision that violates clearly established legal rights of consumers by mischaracterizing the Credit/Debit Card Surcharges as "program fees" in its Terms of Service because the Merchant Agreements with schools clearly require compliance with rules promulgated by the Credit Card companies providing for registration, disclosures and limitations on the amount charged.

103.     Namely, Merchants accepting credit card payments must clearly and prominently disclose to consumers any Credit/Debit Card Surcharge that will be assessed, including (i) the exact amount or percentage; (ii) a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions; and (iii) a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction. *See, e.g.,* 5.6.1.6 VISA Rules, US Credit Card Surcharge Maximum Amount – US Region and US Territories; 5.6.1.7 VISA Rules, US Credit Card Surcharge Disclosure Requirements – US Region and US Territories; 5.6.2.1 VISA Rules, Convenience Fees – AP, CEMEA, and US Regions.

104.    Both Visa and Mastercard prohibit ANY Surcharge to be imposed on debit cards. *Id*.

105.    Heartland's charges to Plaintiffs and the putative Class members further violates the TCCWNA because the Credit/Debit Card Surcharges exceeded the rules of the card network associations.  Specifically, all Surcharges must be clearly disclosed and explained.  Second, the amount of the surcharge is limited to the cost of credit but can never exceed 4%.  In the case of Plaintiffs, the credit card surcharges exceeded both the cost of credit and the applicable cap.  *See, e.g.,* 5.6.1.6 VISA Rules, US Credit Card Surcharge Maximum Amount – US Region and US Territories; 5.6.1.7 VISA Rules, US Credit Card Surcharge Disclosure Requirements – US Region and US Territories; 5.6.2.1 VISA Rules, Convenience Fees – AP, CEMEA, and US Regions.

106.    Plaintiffs have a clearly established right to receive a clear and accurate disclosure of both the nature and the amount of any surcharge imposed.  Specifically, Plaintiffs have a clearly established right to receive an accurate disclosure of the exact amount or percentage charged, a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions, and a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction.

107.    The inaccurate and misleading Program Fee disclosure provisions in Heartland's Terms of Service constitute a violation of TCCWNA in that they deprive Plaintiffs of the clearly established right to receive a clear and accurate disclosure of the true nature and amount of any surcharge imposed.

108.    In addition, Heartland's inclusion of the inaccurate and misleading Program Fee disclosure provisions in the Terms of Service constitute a violation of TCCWNA in that Heartland

has a clearly established responsibility to provide clear and accurate disclosure of the true nature and amount of any surcharge imposed.

109.     Plaintiffs, and all members of the Class, suffered harm as a result of the inclusion of prohibited language by Heartland in the Terms of Service, and therefore they are "aggrieved consumers" within the meaning of N.J.S.A. § 56:12-17.

110.     Specifically, Plaintiff Mazzei is an aggrieved consumer because she incurred monetary damages in the amount of no less than $37.50 as a consequence of Heartland's inclusion of prohibited provisions in the Terms of Service and other writings offered to and entered into by Plaintiffs.

111.     Likewise, Plaintiff Call is an aggrieved consumer because he incurred monetary damages in the amount of no less than $97.50 as a consequence of Heartland's inclusion of prohibited provisions in the Terms of Service and other writings offered to and entered into by Plaintiffs.

112.     Alternatively, Plaintiffs are aggrieved consumers in that the misleading and violative language of Heartland's surcharge disclosures deterred Plaintiffs from seeking other less expensive methods to pay for school fees.  Specifically, had they not been deterred by Heartland's inclusion of language stating that "your school district may require a program fee or membership fee for your use of the [MySchoolBucks payment service]" and "your child's school receives the full payment", Plaintiffs would have sought and utilized alternate methods to pay for school fees.

113.     As a result of Heartland's violations of TCCWNA as alleged herein, Plaintiffs and putative Class members are entitled to damages pursuant N.J.S.A. § 56:12-17 which include actual damages and statutory damages of not less than $100 per violation, together with reasonable attorney fees and costs.

## COUNT III
### Breach of Contract

114.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 113 as if expressly set forth in this Count.

115.    Plaintiffs assert this Breach of Contract Claim in the alternative to the Consumer Protection Statutory violations asserted in Counts I and II, V and IV.

116.    Plaintiffs and Class members contracted with Heartland for the use of the MySchoolBucks program. Exhibit C, Terms of Service (May 3, 2016 Version).

117.    Plaintiffs and Class members fully performed their obligations under the contract and performed all other conditions precedent to the contract.

118.    Plaintiffs gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under the contract.

119.    The Paragraph titled "Program Fee or Membership Fee" of the standardized MySchoolBucks program Terms of Service contract with Plaintiffs and Class members stated that a school district may require a program fee and that the school would receive "the full payment:"

> Your school district may require a program fee or membership fee for your use of the Service. If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

The Agreement further stated:

> **Payments to Schools**
> You may make payments to your child's school account using a credit card. Your credit card provider may have imposed a maximum amount which can be placed on your credit card. **Your child's school receives the full payment.** Payments are processed promptly for your child's use. …

(Emphasis added).

120.    Because Heartland represented that the school districts require and would ultimately retain the MySchoolBucks Program Fee, when, in fact, the schools did not require the fee, and Heartland did not pay the Program Fee to the school as promised, Heartland has materially breached the MySchoolBucks Terms of Service agreement with Plaintiffs and putative Class members.

121.    As a direct and proximate result of Heartland's material breach, Plaintiffs and putative Class members are entitled to a refund of the amount paid as "Program Fees."

<u>**COUNT IV**</u>
**Breach of Contract – Third-Party Beneficiaries**

122.    Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege paragraphs 1 through 121 as if expressly set forth in this Count.

123.    Plaintiffs assert this Breach of Contract Claim in the alternative to the Consumer Protection Statutory violations asserted in Counts I and II, V and VI.

124.    Heartland and the school districts enter into a contract titled "Government and Public Education Credit/Debit Card Processing Agreement." (Attached hereto as Exhibit D is the Government and Public Education Credit/Debit Card Processing Agreement with Duval County Public Schools.

125.    In that Agreement, the parties agree to comply with the Rules and regulations of Visa, MasterCard, Discover and American Express: "4.11. Merchant shall at all times comply with the Rules and operating regulations of each of the Card Schemes and American Express as well as all applicable federal, state, and local, rules and regulations."

126.    The school districts are the "Merchant" referred to in the Agreement, per Section 2.19 of the Agreement: "'Merchant' generally means the party identified as the recipient of this

Agreement.  It can cover the merchant itself and any third party that may be associated with them (i.e. VARs, gateway providers etc.)."

127.    Pursuant to the Agreement, all rules and regulations imposed by Visa, MasterCard, Discover and American Express – most of which inure to the benefit of the end-using consumer – must be followed.

128.    As such, the Agreement specifically requires the parties to abide by the rules and regulations set by Visa, MasterCard, Discover and American Express as they pertain to the imposition of Credit/Debit Surcharges on consumers, and the disclosure of such surcharges to consumers.

129.    For example, Visa's regulations require that the nature of any surcharge be "clearly" disclosed to the consumer, that debit transactions cannot be surcharged, and that surcharge amounts are strictly limited:

> Disclose the surcharge as a merchant fee and, for both in-store and online transactions, clearly alert consumers to the practice at the point of entry, the point of sale or transaction, and on every receipt.
>
> *        *        *
>
> The ability to surcharge only applies to credit card purchases, and only under certain conditions.  U.S. merchants cannot surcharge debit card or prepaid card purchases.
>
> *        *        *
>
> U.S. merchants may assess a surcharge on credit card purchases that does not exceed the merchant discount rate for the applicable credit card surcharged.

*See,* Exhibit E, Visa's "Merchant Surcharge Q & A."

130.    Heartland's MySchoolBucks program runs afoul of those very rules and regulations because under the controlling card-issuers' guidelines, before any surcharge can be imposed, it must be clearly and accurately disclosed to the consumer as a "surcharge."

131.    Specifically, in violation of the card-issuers' guidelines, the MySchoolBucks program fails to clearly and prominently disclose to consumers any surcharge that will be assessed, including (i) the exact amount or percentage; (ii) a statement that the surcharge is assessed by the merchant and is applicable only to credit card transactions; and (iii) a statement that the surcharge amount is no greater than the amount paid by the merchant to its payment processor for processing the transaction.

132.    The Agreement entered into between Heartland and school districts is a valid and enforceable contract, with the purpose of governing the process of accepting and processing consumer payments through Heartland's MySchoolBucks program.

133.    The Agreement (at Section 2.26) explicitly incorporates the defined term "Rules" as "the operating regulations, requirements [,] terms and conditions of the Card Schemes presently in effect and as they may be amended from time to time."

134.    The Agreement (at Section 4.11) explicitly defines the "Rights, Duties, and Responsibilities" of the parties as including compliance at all times "with the Rules and operating regulations of each of the Card Schemes and American Express as well as all applicable federal state, and local, rules and regulations."

135.    The rules and regulations explicitly incorporated into the Agreement by Section 4.11 – particularly the rules and regulations regarding the disclosure of fees and surcharges to consumers – exist for sole benefit of the consumer.

136.    The parties to the Agreement included the rules and regulations regarding the disclosure of fees and surcharges because they intended consumers to benefit from the existence of the contract, and intended to recognize consumers' right to performance of those rules and regulations.

137.    As such, the terms of the Agreement deliberately confer benefits and rights to consumers who use Heartland's MySchoolBucks program, and demonstrate the parties' intention to confer such benefits and rights.

138.    Because Heartland fails to disclose the true nature of the Credit/Debit Card Surcharge at all, it cannot charge these fees without violating the rules and regulations imposed by the Card Schemes for this specific purpose.

139.    The failure to clearly and accurately disclose the true nature of the Program Fees associated with each credit and debit transaction constitutes a breach of the Agreement.

140.    As a direct and proximate result of Heartland's material breach, Plaintiffs and putative Class members each suffered damages and are entitled to a refund of the amount paid as "Program Fees," that were actually undisclosed Credit/Debit Card Surcharges.

<u>**COUNT V**</u>
<u>**(AS TO THE NEW JERSEY SUBCLASS ONLY)**</u>
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-2.1 *et seq.***

141.    Plaintiff Mazzei, on behalf of herself and all others similarly situated, repeats and realleges paragraphs 1 through 140 as if expressly set forth in this Count.

142.    Plaintiffs are both "persons" and "consumers" pursuant to N.J.S.A. § 56:8-1(d), as they and all Subclass members are natural persons as defined therein.

143.    Defendant is a "person" pursuant to N.J.S.A. § 56:8-1(d), as it is a business entity, corporation or company as defined therein.

144.    Defendant's MySchoolBucks service is "merchandise" pursuant to N.J.S.A. § 56:8-1(c), as it is a service offered directly or indirectly to the public for sale as defined therein.

145.    Defendant engages in the sale of merchandise pursuant to N.J.S.A. § 56:8-1(e), as it offers its MySchoolBucks service directly or indirectly to the public for sale.   The CFA at N.J.S.A. § 56:8-2.1, makes it unlawful for any entity to operate in a way that implies an association with the Federal Government or the State of New Jersey:

> It shall be an unlawful practice for any person to operate under a name or in a manner which wrongfully implies that such person is a branch of or associated with any department or agency of the Federal Government or of this State or any of its political subdivisions, or use any seal, insignia, envelope or other format which simulates that of any governmental department or agency.

146.    Heartland's Terms of Service in place at the relevant time governed Plaintiffs' obligation to pay the Program Fee.  That contract and the explanations published on Heartland's website wrongfully imply that school districts impose, collect and receive the MySchoolBucks Program Fees:

> **Program Fee or Membership Fee**
>
> Your school district may require a program fee or membership fee for your use of the [MySchoolBucks] Service.
>
> If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

147.    Heartland's MySchoolBucks website further clarifies on its Frequently Asked Questions page the Program Fee as follows:

> Is there a fee for using MySchoolBucks?

> Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.

*See* MySchoolBucks Frequently Asked Questions.[4]

148.    In New Jersey, school districts are State-entities, operating under the New Jersey Department of Education, pursuant to N.J.S.A. § 18A:1, *et seq.*

149.    In violation of N.J.S.A. § 56:8-2.1, Heartland operated in a manner which wrongfully implies that Heartland is associated with a department or agency of this State.

150.    Specifically, Heartland made unequivocal representations to Plaintiff Mazzei and the New Jersey Subclass that the fees charged to use Heartland's MySchoolBucks payment service were fees that were required by the school district.  By doing so, in Plaintiff Mazzei's case, Heartland operated in a manner that implied that it was collecting fees on behalf of the Westville School District and that those fees were in fact required by, and remitted to the Westville School District.

151.    A violation of N.J.S.A. § 56:8-2.1 is an unconscionable commercial practice and is a *per se* unlawful act under the CFA.

152.    Plaintiff Mazzei and members of the New Jersey Subclass suffered an ascertainable loss equal to the amount of all Program Fees paid during the class period because those fees were paid while and because Heartland was wrongfully operating in a manner that implied that it was charging and collecting fees on behalf of a State entity in violation of the CFA.  The amount of this ascertainable loss is equal to the entire fee because it was charged and collected illegally.

153.    Plaintiff Mazzei suffered an ascertainable loss an amount no less than $37.50, which represents the total amount of fees that she was forced to pay to Defendant.

---

[4] https://www.myschoolbucks.com/ver2/help/gethelp  Site last visited December 4, 2019.

154.    As a direct and proximate result of Heartland's violations of the CFA as set forth in the preceding paragraphs, Plaintiff suffered a concrete and ascertainable loss in the amount set forth above.

155.    But for Heartland's unconscionable acts and misrepresentations in violation of the CFA, Plaintiff would not have suffered any damage.  Said another way, Plaintiff's damages are the direct and proximate result of Defendant's violations of the CFA, in that her loss flowed from Heartland's acts.

156.    In addition, Plaintiff and all members of the New Jersey Subclass Class are entitled to declaratory and injunctive relief, declaring that Heartland violated N.J.S.A. § 56:8-2.1; and prohibiting Heartland from further violations of the CFA.

157.    Plaintiff and each member of the New Jersey Subclass is entitled to treble damages pursuant to N.J.S.A. § 56:8-19.

158.    In accordance with N.J.S.A. § 56.8-19 and N.J.S.A. § 56.12-17, Plaintiff and New Jersey Subclass members are entitled to attorney's fees and litigation costs.

**COUNT VI**
**(AS TO THE NEW JERSEY SUBCLASS ONLY)**
**Violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act,**
**("TCCWNA") N.J.S.A. §56:12-14, *et seq*.**

159.    Plaintiff Mazzei, on behalf of herself and all others similarly situated, repeats and realleges paragraphs 1 through 158 as if expressly set forth in this Count.

160.    The New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA) § 56:12-14 *et seq.,* prohibits sellers from "offer[ing] to any consumer or prospective consumer or enter[ing] into any written consumer contract or giv[ing] or display[ing] any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly

established legal right of a consumer or responsibility of a seller . . . as established by State or Federal Law . . . ." N.J.S.A. § 56:12-15.

161.    Plaintiff Mazzei and all members of the New Jersey Subclass are "consumers" within the meaning of TCCWNA.

162.    Heartland is a "seller" within the meaning of TCCWNA.

163.    Heartland's MySchoolBucks Terms of Service Agreement is a written agreement between Heartland and Plaintiff Mazzei which is both a "consumer contract" and a notice within the meaning of TCCWNA.

164.    Heartland gave, displayed, offered and/or entered into the MySchoolBucks Terms of Service Agreement with Plaintiff Mazzei as well as with all members of the New Jersey Subclass.

165.    N.J.S.A. § 56:8-2.1 makes it unlawful for any entity to operate in a way that implies an association with the Federal Government or the State of New Jersey.

166.    Heartland's Terms of Service in place at the relevant time governed Plaintiffs' obligation to pay the Program Fee.  That contract (and the explanations published on Heartland's website) contain provisions that wrongfully imply that school districts impose, collect and receive the MySchoolBucks Program Fees in direct violation of N.J.S.A. § 56:8-2.1:

> **Program Fee or Membership Fee**
>
> Your school district may require a program fee or membership fee for your use of the [MySchoolBucks] Service.
>
> If you are required to pay a program fee, you will be notified on a screen prior to completing the payment transaction and any such program fee will be required for each payment you make using the Service.

167.    Heartland's MySchoolBucks website further clarifies on its Frequently Asked Questions page the Program Fee as follows:

> Is there a fee for using MySchoolBucks?
>
> Signing up for MySchoolBucks is free. Depending on your school/district and order/item you are purchasing, you may be required to pay a program or membership fee.

*See* MySchoolBucks Frequently Asked Questions.[5]

168.    In New Jersey, school districts are State-entities, operating under the New Jersey Department of Education, pursuant to N.J.S.A. § 18A:1, *et seq.*

169.    In violation of TCCWNA, Heartland offered, displayed and entered into contracts and/or notices that wrongfully imply that Heartland is associated with a department or agency of this State, as is prohibited by N.J.S.A. § 56:8-2.1.

170.    Specifically, Heartland offered and entered into the Terms of Service with Plaintiff Mazzei and the New Jersey Subclass, which contained provisions that – in violation of N.J.S.A. § 56:8-2.1 – stated and/or implied that the fees charged to use Heartland's MySchoolBucks payment service were fees that were required by the school district.  Said provisions, in Plaintiff Mazzei's case, wrongfully implied that Heartland was collecting fees on behalf of the Westville School District and that those fees were in fact required by, and remitted to the Westville School District.

171.    Plaintiff and the New Jersey Subclass have a clearly established right established by N.J.S.A. § 56:8-2.1 to not be subject to a false statement implying that they are dealing with and paying fees to an entity associated with the State Government.

---

[5] https://www.myschoolbucks.com/ver2/help/gethelp  Site last visited December 4, 2019.

172.    Heartland violated TCCWNA by including provisions in its Terms of Service that violate Plaintiff Mazzei's and the New Jersey Subclass's clearly established rights under N.J.S.A. § 56:8-2.1.

173.    In addition, Heartland has a clearly established responsibility established by N.J.S.A. § 56:8-2.1 to not wrongfully imply that they are an entity associated with the State Government.

174.    Heartland violated TCCWNA by including provisions in its Terms of Service that violate Heartland's clearly established responsibilities as set forth in N.J.S.A. § 56:8-2.1.

175.    Plaintiff Mazzei and the New Jersey Subclass suffered harm as a result of the inclusion of prohibited language by Heartland in the Terms of Service, and therefore they are "aggrieved consumers" within the meaning of N.J.S.A. § 56:12-17.

176.    Specifically, Plaintiff Mazzei is an aggrieved consumer because she incurred monetary damages in the amount of no less than $37.50 as a consequence of Heartland's inclusion of prohibited provisions in the Terms of Service and other writings offered to and entered into by Plaintiff and the New Jersey Subclass.

177.    Alternatively, Plaintiff Mazzei and all members of the New Jersey Subclass are aggrieved consumers in that the misleading language and implication that Heartland was acting in association with a governmental agency deterred Plaintiff Mazzei and the New Jersey Subclass from seeking alternate methods to pay for school expenses that did not have associated non-governmental surcharges masquerading as required school district fees.

178.    Specifically, had they not been deterred by Heartland's inclusion of language wrongfully implying that Heartland was imposing fees as, or on behalf of, a branch or department

of the State of New Jersey, Plaintiffs would have sought and utilized alternate methods to pay for school fees.

179.    As a result of Heartland's violations of TCCWNA as alleged herein, Plaintiff Mazzei and New Jersey Subclass are entitled to damages pursuant N.J.S.A. § 56:12-17 which include actual damages and statutory damages of not less than $100 per violation, together with reasonable attorney fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that the Court enter an Order:

A.    Certifying this action as a class action as provided by Rule 23(a) and (b) of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class and Subclass representatives, and appointing the undersigned to act as Class Counsel;

B.    Declare that Heartland is financially responsible for notifying all Class and Subclass members;

C.    For injunctive relief prohibiting Heartland from future violations of the Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*, and Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.*, and requiring Heartland to comply with these statutes and all applicable rules and regulations;

D.    Awarding disgorgement and restitution of all the MySchoolBucks Program Fees Heartland collected and retained from Plaintiff and Class members;

E.    Awarding actual damages, statutory damages, treble damages pursuant to N.J.S.A.§ 56:8-19, and actual and statutory damages pursuant to N.J.S.A. § 56: 12-17;

F.    Awarding reasonable attorneys' fees and costs of suit in connection with this action pursuant to N.J.S.A. § 56:8-19 and N.J.S.A. § 56:12-17;

G.      Declaring that Heartland is in breach of its contracts with Plaintiff and Class members and awarding compensatory damages;

H.      Awarding pre-judgment and post-judgment interest; and

I.      For such other and further relief as Plaintiff and Class members may be entitled or as the Court deems equitable and just.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within 10 days after the filing with the Court, pursuant to N.J.S.A. § 56:8-20.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO RULE 11.2

Pursuant to Rule 11.2, I hereby certify, to the best of my knowledge, that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated, except for the matter of *Story v. Heartland Payment Systems, LLC*, pending in the United States District Court for the Middle District of Florida, Jacksonville Division, Civil Action No. 3:19-cv-000724 (TJC)(JBT).

Dated: October 23, 2020                    */s  Lisa R. Considine*
                                           Lisa R. Considine, Esq.
                                           David J. DiSabato, Esq.
                                           **DiSABATO & CONSIDINE LLC**
                                           196 Santiago Avenue
                                           Rutherford, New Jersey 07070
                                           Phone: 201.762.5088
                                           Fax: 973.453.0338
                                           *lconsidine@disabatolaw.com*
                                           *ddisabato@disabatolaw.com*

**VARNELL & WARWICK, P.A.**
s/ Brian W. Warwick_____
Brian W. Warwick, FBN:  0605573
*(Pro Hac Vice application forthcoming)*
Janet R. Varnell, FBN:  0071072
*(Pro Hac Vice application forthcoming)*
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*bwarwick@varnellandwarwick.com*
*jvarnell@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

***Attorneys for Plaintiffs Deborah Mazzei
and Allen Call***