[Docket No. 107]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| DEBORAH MAZZEI, ALLEN CALL, and KRISTIN CALL, on behalf of themselves and the putative class,<br><br>        Plaintiffs,<br><br>        v.<br><br>HEARTLAND PAYMENT SYSTEMS, LLC,<br><br>        Defendant. | Civil No. 20-cv-14929 (RMB-SAK)<br><br>**OPINION** |

**APPEARANCES:**

Disabato & Considine LLC
David J. Disabato, Esq.
Lisa R. Considine, Esq.
196 Santiago Avenue
Rutherford, NJ 07070

Varnell & Warwick, P.A.
Janet R. Varnell, Esq. (*pro hac vice*)
Brian W. Warwick, Esq. (*pro hac vice*)
1101 E. Cumberland Ave.
Suite 201H
Tampa, FL 33602

Lieff Cabraser Heimann & Bernstein LLP
Jason Louis Lichtman, Esq.
250 Hudson Street
8th Floor
New York, NY 100013

     *Counsel for Plaintiffs Deborah Mazzei, Allen Call, and Kristin Call, on behalf of the putative class*

Saul Ewing LLP
Ryan L. DiClemente, Esq.
650 College Road East
Suite 4000
Princeton, NJ 08540-6603

King & Spalding LLP
David L. Balser, Esq. (*pro hac vice*)
Laura Harris, Esq. (*pro hac vice*)
Timothy H. Lee, Esq. (*pro hac vice*)
Peter M. Starr, Esq. (*pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036

    *Counsel for Defendant Heartland Payment Systems, LLC*

Help

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court on the Renewed Motion to Stay brought by Defendant Heartland Payment Systems, LLC. [Docket No. 107.] For the reasons expressed herein, Heartland's Renewed Motion to Stay is **GRANTED**.[1] It is somewhat ironic that this case involves schools. As schoolchildren, we learn about the importance of following the rules. Rules keep the classroom organized and running smoothly. We also learn that when we don't follow the rules, there are consequences. In the first instance, the consequence is usually a warning (or two) from the teacher. After that, it is a timeout. That is what the Court orders here. Plaintiffs failed to follow the Court's very clear rules. Accordingly, this case must be stayed under the first-filed rule to prevent further gamesmanship by Plaintiffs in its prosecution of two nearly identical actions in two different forums.

## I.   FACTUAL BACKGROUND

In October 2020, Plaintiffs initiated a class action in this Court against Defendant Heartland Payment Systems, LLC ("Heartland"), a payment processing and technology company. [Docket No. 1.] Plaintiffs are parents who used a Heartland product, "MySchoolBucks," to electronically deposit and make payments to their children's schools for cafeteria food and other school-related expenses. [*See*

---

[1] The Court refers to the parties' submissions as follows: Defendant's Memorandum of Law in Support of its Renewed Motion to Stay, Docket No. 107 ("Def.'s Br."); Plaintiffs' Corrected Memorandum of Law in Opposition to Defendant's Renewed Motion to Stay, Docket No. 110 ("Pls.' Opp'n Br."); Defendant's Reply in Support of its Renewed Motion to Stay, Docket No. 109 ("Def.'s Reply").

Docket No. 17 ¶ 16 ("FAC").] They allege that Heartland provided "false and deceptive" explanations of a fee (the "Program Fee") imposed on deposits placed in their children's MySchoolBucks account in violation of two New Jersey consumer protection statutes, the New Jersey Consumer Fraud Act ("NJCFA"), and the New Jersey Truth-in-Consumer Contract Warranty and Notice Act ("TCCWNA") and in breach of various contracts between the Plaintiff-parents and Heartland, namely, Heartland's Terms of Service. [*Id*. ¶¶ 1–8, 36.] Specifically, Plaintiffs allege that Heartland's description of the Program Fee is false and deceptive because the MySchoolBucks Terms of Service failed to clearly disclose that the Program Fee is (i) an unregulated credit card surcharge; (ii) not required by schools, but by Heartland which imposes and collects the Program Fee; and (iii) charged and retained exclusively by Heartland rather than by their children's schools. [*Id*. ¶¶ 37–40.]

These allegations are virtually identical to those made in an earlier-filed class action pending in the Middle District of Florida: *Story v. Heartland Payment Systems, LLC*, No. 3:19-cv-000724 (filed May 15, 2019). In *Story*, a putative class of plaintiffs (also parents who used MySchoolBucks to make payments to their children's schools) identically allege that Heartland made misleading representations and omissions regarding the Program Fee. [*Story* Docket No. 117 ¶¶ 54–55, 62 ("*Story* Compl.").] Indeed, the *Story* complaint provides the same exact three reasons as the First Amended Complaint in the instant action (with almost the exact same language) explaining why Heartland's representations and omissions regarding the Program Fee in the MySchoolBucks Terms of Service is false and deceptive.

2

[*Compare* FAC ¶¶ 36–40, *with Story* Compl. ¶¶ 40–44.] As here, the *Story* plaintiffs asserted causes of action under the CFA and TCCWNA and for a breach of contract. [*Id.* ¶¶ 77–122.] Additionally, the *Story* plaintiffs asserted a cause of action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which has since been dismissed. [*Id.* ¶¶ 123–31]; *Story v. Heartland Payment Sys., LLC*, 2022 WL 18495232, at *2 (M.D. Fla. Mar. 4, 2022) (dismissing FDUTPA claim and denying Heartland's motion to dismiss CFA, TCCWNA and breach of contract claims).

*Story* and the instant action only meaningfully differ in two ways. First, the two actions slightly differ in the scope of their proposed classes. Both actions seek to certify classes of parents "who entered into a MySchoolBucks Terms of Service Agreement with Heartland … and who paid a MySchoolBucks Program Fee to Heartland." [*Compare Story* Compl. ¶ 66, *with* FAC ¶ 67.] But plaintiffs in *Story* seek to certify a nationwide class of MySchoolBucks users "except those persons who reside in the State of New Jersey," whereas Plaintiffs here seek to certify a nationwide class (including persons who reside in the State of New Jersey) as well as a subclass of persons residing in the state of New Jersey. [*Id.*]

Why the need for two different class actions concerning the same subject matter which diverge only slightly in the scope of their class definitions? Despite a forum selection clause in the MySchoolBucks Terms of Service Agreement specifying that "any dispute relating to the [Terms of Service] … shall be subject to the jurisdiction of the courts of the State of New Jersey," the *Story* Plaintiffs chose to file their case in Florida and Heartland elected not to enforce the forum selection

3

clause and transfer the case to New Jersey. Plaintiffs in *Story* later amended their complaint to carve out New Jersey residents from the *Story* class definition. [*Story* Compl. ¶ 66.] Plaintiffs' counsel in *Story*, who also appear as Plaintiffs' counsel in this action, assured this Court that its reasons for carving out the New Jersey class was not to forum-shop and receive two bites at certifying a nationwide class action, but rather, because Heartland successfully moved to dismiss for lack of personal jurisdiction a named plaintiff from *Story*, Allen Call, who now appears as a named plaintiff in this action. [*See* Docket No. 61 at 8:25–14:19.][2]

   *Story* also dramatically differs from the instant action in its procedural posture. The parties in *Story* have completed fact discovery and are well underway with expert discovery. [Def.'s Br. at 11; Pls.' Opp'n Br. at 5.] The *Story* Plaintiffs are scheduled to file a motion for class certification in October 2023. [*See Story* Docket No. 175.] Here, by contrast, Heartland has not even responded to Plaintiffs' First Amended Complaint on account of the repeated stops and starts to this case, described further below.

---

[2] The Court remains skeptical. It is unclear why the dismissal of a named plaintiff in a putative nationwide class action in one forum requires a virtually identical nationwide class action with a state-specific subclass in another forum. Mr. Call could have simply been an absent class member in *Story* represented by the named plaintiffs. [Docket No. 28 at 9:1–10:1 (THE COURT: "[W]hen I hear that I have counsel in Florida and now they want to come to New Jersey as pro hac and they want the Judge in Florida to carve out New Jersey, that sounds to me like two attorneys who really want to be in two different forums, and I don't like that.").]

## II.     PROCEDURAL BACKGROUND

### A.     The Court Imposes a Stay of This Action and Orders Only "Very, Very Limited" Discovery Related to the New Jersey Subclass

On March 5, 2021, Heartland made a motion (which it now renews) to stay this instant action given the more advanced posture of the first-filed *Story* action. [*See* Docket No. 31.] The parties completed their motion to stay briefing on the "first-filed" issue on April 12, 2021. [*See* Docket No. 34.] However, given a pending motion to dismiss before the *Story* court, this Court administratively terminated the instant action pending the *Story* court's decision in order to conserve both courts' resources, and afford this Court an opportunity to determine what aspects of the forthcoming *Story* decision might be binding or instructive. [*See* Docket No. 52.] Following the *Story* court's March 4, 2022, decision denying in part and granting in part Heartland's motion to dismiss, this Court lifted the administrative termination and invited supplemental briefs on Heartland's motion to stay. [*See* Docket No. 56.]

On May 3, 2022, the Court held a hearing on Heartland's motion to stay. [*See* Docket No. 59.] At the hearing, the parties explained that the *Story* court instructed them to explore the possibility of settlement. [*See* Docket No. 61 at 4:24–5:3.] The Court stated on the record that if the parties could not settle the *Story* matter, they would be permitted to proceed with discovery in this case. But the Court was extremely clear in its instruction: it would only "***allow very, very limited discovery [] in New Jersey***" and that discovery in *Story* "***cannot overlap at all***" with discovery taken in New Jersey. [Docket No. 61 at 6:11–19, 8:24–25.] The reason for the Court's order

5

was equally clear: there is "no sense" in duplicating discovery between two competing nationwide class actions that seek to certify nearly identical classes on nearly identical claims. [*Id.* at 6:20–7:3 (THE COURT: "[D]iscovery cannot duplicate anything that's going on in New Jersey. I'm just trying to keep this case as pruned as possible. I just don't [] know, why there are two cases.").] The Court entered an order later that day administratively terminating Heartland's motion to stay pending settlement discussions. [Docket No. 60.]

The parties were unable to come to a settlement agreement. [*See* Docket No. 63.] Accordingly, on June 21, 2022, the Court ordered the Clerk to reopen the matter and to reactivate Heartland's motion to stay which it granted in part. [Docket No. 64.] Noting that the two matters were "nearly identical," the Court again made clear that it would allow Plaintiffs to conduct "*limited* discovery relating to claims and issues that are unique to this case and not duplicative of any discovery in the *Story* matter." [*Id.* (emphasis in original).]

### B.  Plaintiffs Fail to Abide by the Court's Clear Limits on Discovery

Despite this Court's repeated admonishments to Plaintiffs' counsel that any discovery here could not be duplicative of any discovery in *Story*, Plaintiffs did not obey. First, Plaintiffs requested that Heartland "agree to deem all discovery produced in the *Story* action as also both produced and usable in the *Mazzei* action." [*See* Docket No. 107-2, Declaration of Peter Starr at Ex. 2 ("Starr Decl.").] Second, seemingly to get around both this Court's orders and Heartland's refusal to permit

6

cross-use of discovery between the two actions, counsel for the *Story* plaintiffs moved to appear *pro hac vice* in this action and likewise, counsel for Plaintiffs here moved to appear *pro hac vice* in *Story*. [*See* Docket Nos. 78, 81; *Story* Docket Nos. 166–67.] Finally, and troublingly, Plaintiffs served over 40 written discovery requests on Heartland *identical* to those already served in *Story*. [*See* Starr Decl. ¶ 11; *see also* Docket No. 82 at 5.]

Upon review of a joint status report filed by the parties, with Heartland setting forth Plaintiffs' attempts to circumvent this Court's clear orders and re-litigate the *Story* matter in New Jersey, the Court again administratively stayed the case for three months and directed Plaintiffs to "submit a discovery proposal to [Magistrate] Judge King specifically setting forth (1) why such discovery is needed and (2) why such discovery is not duplicative of the Florida action." [Docket No. 83.] Plaintiffs submitted a discovery proposal to Judge King on March 6, 2023. [Docket No. 92.] After conferring with this Court, Judge King lifted the administrative stay and entered a modified order denying Plaintiffs' request to "cross-use" discovery produced in *Story* and ordering Plaintiffs that "[t]o the extent that counsel from [*Story*] have appeared in this matter, Plaintiffs shall be prohibited from using any discovery counsel obtained in [*Story*] that is not otherwise independently obtained in connection with this matter." [Docket No. 98 at 2.]

At a May 23, 2023, discovery conference before Judge King, Plaintiffs again indicated their plans to disregard this Court's orders. Counsel for Plaintiffs requested that Heartland file a responsive pleading and Judge King set a discovery schedule

7

which would include fact depositions and expert reports. [Docket No. 105 at 9:15–

10:6.] After conferring with this Court, Judge King held another discovery

conference on June 1, 2023, outlining this Court's view that Plaintiffs disregarded its

prior orders to limit discovery to only New Jersey-related matters and named

plaintiffs and to not duplicate any discovery from *Story*:

> THE COURT: So after having reviewed the docket, having
> spoken to Judge Bumb, it's this Court's understanding that
> the motion to stay was granted in part … out of plaintiffs'
> request for some discovery. It appears that Judge Bumb was
> fully inclined to grant the motion to stay and to
> accommodate plaintiff. She allowed some limited discovery
> which she feels has further run amuck and almost feels that
> the plaintiffs have taken advantage of her generosity.

[Docket No. 106 at 15:25–16:8.] Judge King invited Heartland to answer the

First Amended Complaint, file a motion to dismiss, or renew its motion to

stay based on the first-filed rule. [Docket No. 104.] Heartland chose to renew

its motion to stay. [Docket No. 107.]

## III.   LEGAL STANDARD

It is well-established that courts have broad discretion to manage cases to

avoid wasteful and duplicative litigation. *See, e.g., Colorado River Water Cons. Dist. v.*

*United States*, 424 U.S. 800, 817 (1976); *Bechtel Corp. v. Local 215, Laborers' Int'l Union*

*of N.A., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (recognizing that "the power to

stay proceedings is incidental to the power inherent in every court to control the

disposition of the causes on its docket with economy of time and effort for itself").

One tool courts use to avoid wasteful and duplicative litigation is the "first-filed"

rule. The first-filed rule empowers courts with the discretion to stay a later-filed action based on principles of comity that "when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220 (3d Cir. 2016). The rule only applies to earlier-filed proceedings involving (1) the same issues; and (2) the same parties. *See EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971, 977 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). "[I]n the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit." *Chavez*, 836 F.3d at 220.

## IV.   DISCUSSION

### A.   The First-Filed Rule Applies Because *Mazzei* and *Story* Involve the Same Issues and Parties

Application of the first-filed rule is appropriate where a second-filed case involves the same parties and the same issues as a first-filed case. *EEOC*, 850 F.2d at 971. There is a disagreement between the parties and in this District as to whether competing actions for purposes of the first-filed rule must be "truly duplicative" such that "determination in one action leaves little or nothing to be determined in the other," *see Atanassov v. Amspec Servs., LLC*, 2016 WL 740269, at *2 (D.N.J. Feb. 24, 2016) (quoting *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007), or whether there only must be a "substantial overlap" in subject matter between the two actions, *see Tekno Prod., Inc. v. Glove Trends Inc.*, 2019 WL 7184544,

at *9 (D.N.J. Dec. 26, 2019). *See Coyoy v. United States*, 526 F. Supp. 3d 30, 43 (D.N.J. 2021) (discussing the disagreement).

The Court need not weigh in on that disagreement which arises in the non-class context. Where, as here, there are competing class actions, courts may stay a later-filed action based on "a high degree of similarity [] between the [] first-filed action and the later-filed case." *MacLean v. Wipro Ltd.*, 2020 WL 7090746, at *6 (D.N.J. Dec. 4, 2020); *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010) ("While in a typical civil action the presence of different defendants or different plaintiffs may result in cases that are not 'materially on all fours' with each other, such is not the case with two collective actions against the same defendant."); *Worthington v. Bayer Healthcare, LLC*, 2012 WL 1079716, at *4 n.3 (D.N.J. Mar. 30, 2012.[3] These courts have "emphasized their desire to avoid duplicative, competing class actions, which could produce inconsistent judgments and burden the judiciary." *MacLean*, 2020 WL 7090746, at *6; *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011) ("[I]n a class action situation such as this, it would be impossible for

---

[3] In *McClean*, then Chief Judge Wolfson acknowledged the cases in the non-class context, "holding that the first-filed rule must be interpreted narrowly, applying only where the proceedings are 'truly duplicative.'" 2020 WL 7090746, at *6 n.4; *see also Atanassov*, 2016 WL 740269, at *2 (applying the "truly duplicative" standard). But Judge Wolfson went on to explain that in the class context, "near identi[ty]" of parties and claims in a class context would be sufficient to apply the first-filed rule. *McClean*, 2020 WL 7090746, at *6 n.4; *see also Worthington*, 2012 WL 1079716, at *4 n.3 ("[I]n the putative class context, requiring an exact identity among the parties and claims would make it so the first-filed rule would never apply, undercutting its purpose of judicial efficiency."). The Court agrees.

the claims to overlap exactly where the actions are brought in different states, and the purpose of the rule would be defeated.").

Here, there is little doubt that *Story* and *Mazzei* involve the same parties and issues. As in *MacLean*, "the same counsel represents the [*Story*] Plaintiffs and the Plaintiffs here, [thus], the class allegations, claims and remedies are not just cut from the same cloth, but they are indistinguishable." *MacLean*, 2020 WL 7090746, at *6.

### 1.    Same Parties

When competing putative class actions raise a first-filed issue, a court conducting a same-parties analysis focuses on similarity of the classes rather than the similarity of the named plaintiffs. *Catanese*, 774 F. Supp. 2d at 688.[4] In both *Story* and this action, plaintiffs seek to certify *identical* nationwide classes of MySchoolBucks users "who entered into a MySchoolBucks Terms of Service Agreement with Heartland … and who paid a MySchoolBucks Program Fee to Heartland." [*Compare Story* Compl. ¶ 66, *with* FAC ¶ 67.] Those "nearly identical" classes render the parties in the two actions sufficiently similar for the Court to apply the first-filed rule. *McClean*, 2020 WL 7090746, at *6 n.4.

Plaintiffs argue that the presence of the New Jersey subclass in this action renders the classes sufficiently difference from *Story*, which carves out New Jersey citizens from its class definition. [Pls.' Opp'n Br. at 23.] The Court disagrees. As

---

[4] Plaintiffs are thus mistaken that that the presence of Ms. Mazzei and the other named plaintiffs in this case render it sufficiently different from *Story*, a putative class action with different named plaintiffs. [*See* Pls.' Opp'n Br. at 21.]

11

explained above, the standard is not "absolute identity" of parties or claims in a class context—near identity and a high degree of similarity is sufficient. *McClean*, 2020 WL 7090746, at *6 n.4. Moreover, the New Jersey carve out and subclass was of Plaintiffs' own making. [*Story* Compl. ¶ 66.] It would entirely frustrate the purposes of the first-filed rule to avoid duplication of effort and potentially inconsistent judgments for plaintiffs in an earlier filed nationwide class action to carve out a class of citizens from one state, file an otherwise identical nationwide class action in the carved-out state adding a state-specific subclass, and then claim the parties are technically different. *Catanese*, 774 F. Supp.2d 684 at 688 (applying first-filed rule where failure to do so would frustrate purposes of the rule). The Court will not reward Plaintiffs for splintering this litigation, which could have been brought in the first instance entirely in New Jersey or, at least, litigated entirely in Florida with Heartland electing not to enforce its forum selection clause.[5]

### 2.   *Same Issues, Claims, and Relief*

The Court also finds that the issues and claims in this case are virtually identical to those in the first-filed *Story* action. Heartland calls the First Amended Complaint a "facsimile" of the *Story* Complaint. [Def.'s Br. at 14.] The Court agrees. *See McLean*, 2020 WL 7090746 at *7 (applying first-filed rule where first amended

---

[5] Plaintiffs are also wrong to claim that the named plaintiffs here were "affirmatively barred from participating in the *Story* action." [Pls.' Opp'n Br. at 22.] Mr. Call was dismissed as a named plaintiff in *Story* for lack of personal jurisdiction, but he otherwise would have fallen within the class definition and his interests would have been represented by the named plaintiffs whose claims survived.

12

complaint was a "near carbon copy" of an earlier filed complaint). Both complaints describe the same exact three ways in which the MySchoolBucks Program fee is misleading using nearly identical language. [*Compare* FAC ¶¶ 36–40, *with Story* Compl. ¶¶ 40–44]; *see also Ivy Dry, Inc. v. Zanfel Labs., Inc.*, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) ("[A] plain reading of the Third Circuit's opinion in E.E.O.C. strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties."). This is hardly surprising as the same law firm, Varnell & Warwick, P.A. appear on both sets of pleadings. [*Compare* FAC at 47, *with Story* Compl. at 48.] The identity of the core issues in both actions demonstrates the need to apply the first-filed rule.

The asserted claims and relief are also virtually identical in both actions. Both actions assert claims for (i) violation of the NJCFA, [*compare* FAC at Count I, *with Story* Compl. at Count I]; (ii) violation of the TCCWNA, [*compare* FAC at Count II, *with Story* Compl. at Count II]; and (iii) breach of the MySchoolBucks Terms of service, [*compare* FAC at Count III, *with Story* Compl. at Count III]. Finally, both pleadings also request the same relief. [*Compare* FAC at Prayer for Relief, *with Story* Compl. at Prayer for Relief.]

Plaintiffs' efforts to materially distinguish the issues and claims between the two actions is unconvincing. First, Plaintiffs point to a third-party beneficiary breach of contract claim against Heartland in this action not asserted in the *Story* action, [Pls.' Opp'n Br. at 24 (citing FAC at Count IV).] The third-party beneficiary breach of contract count alleges that Heartland failed to comply with merchant agreements

13

used by schools across the country where a merchant agrees to comply with the rules and regulations of various credit card companies. [*See* FAC ¶¶ 129–47.] But the *Story* Complaint makes similar allegations. [*See Story* Compl. ¶¶ 26–34.] True, there is no formal count in the *Story* Complaint styled as "Breach of Contract – Third-Party Beneficiaries," but, as Heartland notes, that claim is largely subsumed and duplicative of the *Story* plaintiffs' breach of contract count and Count I under the NJCFA which alleges that "Heartland's fees exceeded "the Merchant Agreements between Heartland and school districts of which parents are *intended third-party beneficiaries*." [*Story* Compl. ¶ 83.] Both complaints thus substantially tell the same story with respect to the third-party beneficiary breach of contract claim. *Worthington*, 2012 WL 1079716, at \*5 (finding that "content of the claims and the relief sought substantially overlap in all instances, and in most instances, overlap with precision"); *Ivy Dry*, 2009 WL 1851028, at \*2 (applying the first-filed rule despite additional claims in second action for common law trade and product disparagement, tortious interference, defamation and unfair competition).

Plaintiffs also argue that Counts V and VI of the First Amended Complaint are not included in *Story*. [Pls.' Opp'n Br. at 25–27.] Counts V and VI purport to assert causes of action under sections of the NJCFA and TCCWNA specific to the state of New Jersey. [*See* FAC at Count V (alleging Heartland's unlawful association with the Federal Government or the State of New Jersey); *see id*. at Count VI (alleging Heartland's unlawful association with a New Jersey state agency).] But as

the court in *Catanese* explained, in a class action, "it would be impossible for the claims to overlap exactly where the actions are brought in different states." 774 F.Supp. 2d at 688. Bringing a duplicative suit in New Jersey means that Plaintiffs can avail themselves of New Jersey-specific claims unavailable in Florida. But that is precisely the behavior the first-filed rule seeks to avoid between duplicative class actions. *Id*. These cases involve the same issues and the first-filed rule counsels in favor of a stay.

### B. The Forum Selection Clause in the MySchoolBucks Terms of Service Does Not Negate the First-Filed Rule

Plaintiffs, relying on *Chemetall US Inc. v. Laflamme*, contend that the MySchoolBucks forum selection clause renders the first-filed rule applicable. [Pls.' Opp'n Br. at 13 ("the presence of a single forum selection clause will almost always render the first-to-file rule inapplicable") (citing *Chemetall US Inc. v. Laflamme*, 2016 WL 1162751 (D.N.J. Mar. 24, 2016)).] But *Chemetall* and similar cases describe a scenario where (i) a party rushes to the courthouse "seek[ing] to take advantage of the first-to-file rule by filing a lawsuit in a forum that the forum selection clause does not permit," *and* (ii) the opposing party *chooses* to enforce the forum selection clause. *Chemetall*, 2016 WL 1162751 at *3; *see also Externetworks, Inc. v. Think Anew, Inc.*, 2021 WL 6062343 at *5 (D.N.J. Dec. 21, 2021). In *Chemetall*, defendants—plaintiffs in a first-filed action in Indiana—disregarded a forum selection clause designating New Jersey as the forum for all disputes and rushed to file suit in Indiana, a purportedly more favorable forum. *Chemetall*, 2016 WL 1162751 at *3–4. The *Chemetall* plaintiffs

15

then initiated a second-filed lawsuit in New Jersey seeking to enforce the forum selection clause. *Id*. Judge Linares denied defendants' motion to transfer the New Jersey case to Indiana because their motivations for filing first in Indiana were driven by forum shopping and was an effort to undermine an otherwise valid forum selection clause. *See id*. at *4; *see also Externetworks*, 2021 WL 6062343 at *5 (first-filed rule did not apply where defendant filed first in Mississippi to preempt a second-filed suit in New Jersey, the designated forum under the parties' agreement).

Here, by contrast, Plaintiffs chose to file first in Florida and Heartland chose *not* to enforce the forum selection clause. Nor did Heartland, as a class action defendant, care to institute a second-filed action in New Jersey and move to transfer the first-filed case to New Jersey. As this Court has already explained, the decision not to enforce the forum selection clause and seek transfer of *Story* to New Jersey was Heartland's prerogative. [Docket No. 28 at 10:10–15.] Plaintiffs cannot now use the forum selection clause as a shield to hide from the first-filed rule when it was Plaintiffs who ignored that same forum selection clause when they chose to file first in Florida.

## C.   The Balance of the Equities Favors a Stay

The parties and issues being virtually identical is enough for this Court to impose a stay. But given this case's history, the Court also will consider equitable factors in deciding whether a stay is appropriate including taking account of any "inequitable conduct, bad faith, or forum shopping" that justifies application of the first-filed rule. *EEOC*, 850 F.2d at 972; *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)

(staying of proceeding "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"). Here, all equitable factors counsel in favor of a stay.

### 1.    *Plaintiffs' Litigation Strategies Created a First-Filed Issue*

As explained above, it was Plaintiffs' litigation strategy—sounding loudly in forum shopping—that splintered this case into two forums. [*See supra* at 11–12.] There is simply no good reason apparent to the Court to justify two opposing nationwide class actions with a single class of New Jersey residents carved-out and put into a subclass in a different forum. The only conclusion the Court can draw is that the *Story* plaintiffs' decision to carve-out the New Jersey class and institute a separate and virtually identical class action in this Court with a New Jersey subclass was an effort to have two chances at class certification. The Court will not tolerate a result that rewards such tactics.

### 2.   *Plaintiffs' Failed to Comply with the Court's Discovery Orders*

Despite the Court's concerns of forum shopping, [*see* Docket No. 28 at 9:1–10:1], the Court liberally permitted Plaintiffs to conduct limited discovery on their supposedly unique New Jersey-based claims while staying the remainder of the case. But the Court was absolutely clear on the record and in its subsequent orders that discovery in Florida and New Jersey could not overlap ***at all***. [Docket No. 61 at 8:24–25; Docket No. 62 (permitting only "*limited* discovery relating to claims and issues that are unique to this case and not duplicative of any discovery in the *Story*

matter") (emphasis in original).] Instead, Plaintiffs served identical discovery requests from those already served in *Story* and demanded that Heartland agree to cross-use of discovery between the two actions. [Starr Decl. ¶¶ 4, 9.] And when Heartland refused, Plaintiffs attempted an end-run around the Court's orders with *Story* counsel moving to appear *pro hac vice* in this action and *Mazzei* counsel moving to appear *pro hac vice* in *Story*. [*Id.*; *see also* Docket Nos. 78, 81; *Story* Docket Nos. 166–67.] Plaintiffs' failure to play by the rules and this Court's orders further justifies the imposition of a stay.[6]

### 3. The Story Action is at a More Advanced Stage Than This Action

*Story*'s advanced procedural posture as compared with this case counsels in favor of a stay. The parties have completed fact discovery and begun expert discovery. [*Story* Docket No. 165 (September 27, 2023, deadline to complete expert depositions).] The deadline for plaintiffs to move for class certification is October 16, 2023, and the *Story* Court will hold a hearing on that motion on February 15, 2024. [*Id.*] Here, by contrast, Defendants have not yet filed any responsive pleading or a Rule 12 motion to dismiss the complaint on account of the Court granting Heartland's initial motion to stay.

---

[6] Plaintiffs' failure to play by the rules also evidences that *Story* and *Mazzei* are one and the same. If the matters were truly different, it should have been easy to draft unique New Jersey-related discovery requests or search terms. [*See* Def.'s Reply at 12 n.5.]

#### 4. *Plaintiffs Will Not Be Prejudiced by a Stay*

Imposing a stay will not severely prejudice Plaintiffs. Given the duplication between the two cases, this Court has always been inclined to follow the lead of the *Story* court. [*See* Docket No. 61 at 8:20–21 (THE COURT: "So the way I see it is Florida should sort of be the lead case."); Docket No. 52 (administratively terminating action pending *Story* court's decision on motion to dismiss).] The stay will not be "indefinite" as Plaintiffs contend. [Pls.' Opp'n Br. at 30.] Upon the *Story* court's decision on class certification, the Court will evaluate any request by Plaintiffs to lift the stay.

## V.     CONCLUSION

In the final analysis, this case must be stayed under the first-filed rule to avoid wasteful and duplicative litigation. The Court has run out of ways to warn Plaintiffs about the consequences for failing to follow the rules. It is time for a timeout. Defendant Heartland Payment Systems, LLC's Renewed Motion to Stay will be **GRANTED**. An accompanying Order shall issue.


September 19, 2023_____                    s/Renée Marie Bumb_____
Date                                         Renée Marie Bumb
                                             Chief United States District Judge

19